IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID M. NAYLOR,** *Administrator of the Estate of Brooke S. Naylor, Deceased*, | ) ) ) ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) Case No. 21-cv-219-DWD ) |
| **VILLAGE OF RIDGWAY, TIMOTHY R CONDON, and TERESA A WHITE,** | ) ) ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff David M. Naylor, the Administrator of the Estate of Brooke S. Naylor, deceased, brings this civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendants the Village of Ridgway, Timothy R. Condon, and Teresa A. White, for alleged violations of his daughter's due process rights in connection with her death (Doc. 1). Now before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 19) and Memorandum in Support (Doc. 20), to which Plaintiff filed a response (Doc. 41).

## The Complaint

Plaintiff alleges the following facts, which for the purposes of this motion are taken as true. *Hishhon v. King & Spaulding*, 467 U.S. 69, 73 (1984). Plaintiff is the Administrator of the Estate of his deceased daughter, Brooke S. Naylor ("Brooke"), who died a resident of Saline County, Illinois on or about March 4, 2019 (Doc. 1, ¶ 4). Brooke was 20 years

old at the time of her death (*Id.*)  Defendants Condon and White are police officers of the Ridgway Police Department and employed by the Village of Ridgway, Illinois (Doc. 1, ¶¶ 5-7).

On the evening of March 3, 2019, Officer Condon stopped Brooke's vehicle because she "had been swerving on the roadway, driving in the wrong lane, and following 5-10 feet behind [an off-duty officer] for some distance" (Doc. 1, ¶ 8).  Upon stopping Brooke, Officer Condon directed her to the Ridgway police station where Officer White was waiting with the off-duty officer (Doc. 1, ¶ 10).  Brooke drove to the police station and Brooke's driver's license was examined and photocopied (Doc. 1, ¶ 10).  Officer Condon questioned Brooke in Officer White's presence and determined that Brooke "had been angrily 'tailgating'" the off-duty officer in the mistaken belief that he was Brooke's boyfriend (*Id.*).

Officers Condon and White knew that Brooke was under the influence of mind-altering drugs at the police station because she was "acting antsy and shaking all over", "acting scared, jumping around, standing up and antsy" and "not making any sense" (Doc. 1, ¶ 11).  Brooke also admitted to Officer Condon that "there 'might be a bag' of drugs in her automobile" (*Id.*).  Officer Condon did not conduct a search of Brooke's vehicle for drugs (Doc. 1, ¶ 13).  Despite knowing that Brooke "was of an immature age, was acting erratically, her judgment was impaired, and she was under the influence of drugs", Officer Condon, with Officer White's cooperation, released Brooke from custody around midnight into 15-degree Fahrenheit weather with blowing winds (*Id.*).

Brooke was not seen alive after being released from custody (Doc. 1, ¶ 15). Plaintiff believes that Brooke had driven her vehicle approximately 4.4 miles from the Ridgway police station, where she then pulled over, exited the vehicle, and began walking through fields in the cold (*Id.*). On March 5, 2019, the Illinois State Police impounded Brooke's vehicle and discovered a paper bag containing methamphetamine (Doc. 1, ¶ 16). On March 8, 2019, Brooke's body was found in a ditch by searchers (Doc. 1, ¶ 15). A forensic pathologist conducted an autopsy on Brooke's body and determined that she had died of hypothermia due to environmental exposure and had both methamphetamine and fentanyl in her body at the time of her death (*Id.*).

Plaintiff brings five claims against Defendants. Counts 1 and 2 assert violations of Brooke's substantive due process rights by Condon and White for failing to protect Brooke from harm (Count 1) and creating a danger by releasing Brooke from custody at night, in frigid conditions, while she was drug-impaired (Count 2). Counts 3 and 4 assert alternative claims against White for failing to intervene (Count 3) and failing to prevent (Count 4) Condon from releasing Brooke from custody. Count 5 asserts a claim against the Village of Ridgway, Illinois for failing to train its officers in how to take protective or preventive measures to assist individuals, like Brooke, who were under the influence of drugs and who could no longer safely operate their vehicles (Doc. 1, ¶¶ 77-78).

## Legal Standard

Defendants now move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 9, Doc. 10). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in Plaintiffs' favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).

## Discussion

To state a claim under § 1983, plaintiffs must allege that defendants deprived them of a right secured by the Constitution or laws of the United States, and that defendants acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiff alleges that Defendants violated Brooke's substantive due process rights by failing to protect her from harm and/or creating a danger by releasing her from custody into unsafe conditions knowing that she was under the influence of drugs.

Defendants move to dismiss Plaintiff's Complaint, arguing that Plaintiff has not alleged a recognized legal duty, and that Condon and White cannot be held liable for failing to protect detain Brooke. Alternatively, Defendants argue that Condon and White are entitled to qualified immunity as the law is not clearly established on these issues that

4

officers can be held liable. Finally, the Village of Ridgway argues that the facts do not support a *Monell* claim and therefore the claim against it should be dismissed.

Plaintiff counters that the Complaint states a plausible claim that Defendants violated his daughter's due process rights by placing her in a more dangerous situation that she otherwise would have faced and then failing to protect her. Specifically, Plaintiff argues that Defendants did have a legal duty to protect Brooke because Defendants held her in custody within the meaning of the Fourth Amendment and no reasonable person in Brooke's situation would have believed she was free to leave the police station after Condon requested that she drive to the police station, and once there, she was questioned extensively about potential criminal activity in the presence of two other police officers (*See* Doc. 1, ¶ 12).

In general, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 197 (1989). Instead, the

> Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot be fairly extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 987-88 (7th Cir. 2021), *cert. denied sub nom*, 142 S.Ct. 389 (2021) (citing *Deshaney*, 489 U.S. at 195)). There are two limited exceptions to this general rule:

> First, the state has an affirmative duty to provide for the safety of a person it has taken into its custody involuntarily. This is often referred to as the

5

> "special relationship" exception. When a state takes a person into its custody and renders him involuntarily unable to care for himself, it has "a corresponding duty" to provide for his basic needs; a violation of this duty "transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."
>
> . . .
>
> [The second exception] applies when the state "affirmatively places a particular individual in a position of danger the individual would not otherwise have faced."

*Id.* at 988 (internal citations omitted).

The "special relationship" exception does not apply to the facts as alleged here. This exception applies "if the state has a 'special relationship' with a person, that is, if the state has custody of a person, thus cutting off alternative avenues of aid." *See Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998). Plaintiff's theory in this case is that Defendants failed to protect Brooke by releasing her to drive late at night, while drug-impaired, into dangerous weather conditions. Although Plaintiff alleges that Brooke was in custody within the meaning of the Fourth Amendment for some time on the night of March 3rd, Plaintiff does not allege that the tragedy of Brooke's death occurred while she was in custody. Nor does the complaint allege facts to infer that Brooke had a serious medical condition which required care that Defendants' actions allegedly violated. *See Ortiz v. Chicago*, 656 F.3d 523 (7th Cir. 2011) (discussing the duty to provide care for the serious medical conditions of persons in custody even if the custody is expected to be short).

Instead, Plaintiff's theory of the case rests on the fact that Defendants released her from custody without taking preventive actions, such as confining her to a cell, driving her home, contacting a third party to take her home, or requiring her to stay at the police

6

department (Doc. 1, ¶ 13).  However, "there is no constitutional right to be deprived of liberty-there is no right to be imprisoned."  *Wilson v. Formigoni*, 42 F.3d 1060, 1066 (7th Cir. 1994); *Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012) (there is no right to be detained). Therefore, the complaint does not allege a claim based on the "special relationship" exception.

The Complaint does, however, raise a potential claim premised on Defendants' creation of a dangerous situation.  *See Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993) (*DeShaney* left "the door open for liability in situations where the state creates a dangerous situation or renders citizens more vulnerable to danger.").  This so-called "state-created danger" doctrine has three elements:

> First, in order for the Due Process Clause to impose upon a state the duty to protect its citizens, the state, by its affirmative acts, must create or increase a danger faced by an individual.
>
> Second, the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual.
>
> Third, because the right to protection against state-created dangers is derived from the substantive component of the Due Process Clause, the state's failure to protect the individual must shock the conscience.

*King ex rel. King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 817–18 (7th Cir. 2007) (internal citations omitted and paragraph breaks added).

The scenarios where the Seventh Circuit has applied the "state-created danger" exception "are rare and often egregious."  *Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1022 (7th Cir. 2003).  The state-created danger doctrine covers situations where the state renders someone "more vulnerable to an existing danger."  *Stevens v. Umsted*, 131 F.3d

7

697, 705 (7th Cir. 1997); *see also Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993) (a state may be liable when it "creates, or substantially contributes to the creation of a danger or renders citizens more vulnerable to a danger than they otherwise would have been.").

Defendants argue that they did not create a danger here because there was no requirement that they detain Brooke. *See Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012). They therefore maintain, that, at worst, by not detaining her, they merely put Brooke back into the same situation, and weather conditions, she had been in before interacting with them "ten minutes" later (*See* Doc. 20, p. 4). The duration of Defendants' interaction with Brooke is not precisely stated in the Complaint but is alleged to have been for more than the "ten minutes" Defendants present. (*See* Doc. 1, ¶¶ 8, 13) (alleging that the interaction occurred sometime between 11:24 p.m. and "soon after midnight"). The Court is not entitled to look beyond the pleadings at this stage. *See Reed*, 986 F.2d at 1124 (faulting district court for going outside the pleadings to dismiss state-created danger claim). Accordingly, construing the allegations in the Complaint in the light most favorable to Plaintiff, it is plausible at this stage that Brooke was safer continuing her drive without Defendants' interference than she was after being stopped. This marginal increase in risk is sufficient at this stage to infer that that Defendants created a danger, satisfying the first element of a state-created danger claim.

However, the Complaint fails to satisfy the second element of a state-created danger claim: proximate causation. For Plaintiff to meet this prong, the Complaint must allege facts suggesting that Brooke was a foreseeable victim of Defendants' actions. *Buchanan-Moore v. Cty. of Milwaukee,* 570 F.3d 824, 828 (7th Cir. 2009). Foreseeability

8

hinges on a number of limiting factors, including whether certain dangers are "familiar and specific" and limited in time and duration. *See id.*, at 828-29; *Brown v. Reyes*, 815 F.Supp.2d 1018, 1024 (N.D. Ill. 2011) (citing *Reed*, 986 F.2d at 1127)). Another limiting factor of the proximate cause analysis is whether the victim is within a definable group of people to which defendant's conduct creates a foreseeable risk. *Id.* at 828. In sum, proximate cause "is a fact specific inquiry, involving a consideration of time, geography, range of potential victims, and the nature of harm that occurred." *Id.* at 829.

For example, in *Reed*, a drunk driver struck Reed's car after crossing the center line of the highway. Earlier that day, the drunk driver had been a drunk passenger in the vehicle, however, the police left him behind after arresting the original driver of the vehicle. The Seventh Circuit found that the dangers presented by drunk drivers were familiar and specific and that the plaintiffs were foreseeable victims because the drunk driver posed a danger to only motorists driving on the same highway. *See Reed*, 968 F.2d at 1127. Further, the dangers to other motorists were limited in both time and scope because the threat would be dispelled once the drunk driver sobered up. *See id.* Thus, the plaintiffs sufficiently stated a claim that the state affirmatively created a danger for motorists on the roadway. *Id.*

In contrast to the circumstances in *Reed,* in *Buchanan–Moore,* the plaintiffs claimed that the County was responsible for the death of Frank Moore ("Moore"). Moore was shot to death by a mentally ill man ("Gray") who broke into the home of Moore's neighbor shortly after he was released from the County jail following a seventy-two-hour confinement. *See* 570 F.3d at 826–27. During his confinement, the County failed to

9

administer psychiatric medications to Gray. *Id.* The Seventh Circuit found that the complaint did not allege facts that would suggest that "Gray's access to a gun, or propensity toward homicide, were specific dangers that were familiar to the County." *Id.* at 828. Moreover, the decedent was not a foreseeable victim because "a generalized, amorphous zone of danger is insufficient to trigger a state duty to protect." *Id.* Finally, the danger posed by Gray was "indefinite," and his mental illness and propensity for criminal acts existed "without temporal boundaries." *Id.* at 829.

The case at bar appears to fall somewhere between *Reed* and *Buchanan-Moore*. Like in *Reed*, if any danger was posed by Brooke's impaired driving, it was of fairly limited time and duration while she was impaired. Moreover, if Brooke's driving posed any danger to any individuals, it could be said that the most likely victims would be her, as the impaired driver, and those coming within the vicinity of her driving, including motorists near the police station. Therefore, if Plaintiff's Complaint was limited solely to the dangers imposed by Brooke's impaired driving, proximate cause may be more easily inferred. *See Reed*, 986 F.2d at 1127 (it can be expected that an intoxicated driver may cause a motor vehicle accident); *Buchanan-Moore*, 570 F.3d at 828 (police can be expected to know that an intoxicated man they placed behind the wheel suffered from impaired judgment and diminished motor skills).

However, here, unlike the foreseeable dangers caused by intoxicated drivers, the Complaint does not allege that Brooke's injuries and death were caused by her drug-impaired *driving*. Instead, Plaintiff alleges that after leaving the police station, Brooke

10

drove 4 miles, and then parked her car on the side of the road and walked off into nearby fields where she died of "hypothermia due to environmental exposure" (Doc. 1, ¶ 15).

Even assuming that Defendants' created danger increased the risk that Brooke would sustain injuries and die because of her impaired driving in suboptimal weather conditions, the factual allegations here do not support an inference that Brooke's actions in abandoning her vehicle and wondering into frozen fields were foreseeable risks known to Defendants. This risk is more akin to the "indefinite" risk articulated in *Buchanan-Moore*, and as plead, the unfortunate events appear more "unpredictable rather than legally foreseeable." *Buchanan-Moore,* 570 F.3d at 828. In short, the Complaint does not allow the Court to infer that Brooke's tragic injuries and death were proximately caused by Defendants' interference with her drive, and subsequent release from the police station. Having found that allegations of proximate cause is lacking, the Court need not explore the remaining components of Plaintiff's claims. *Id.* at 828 (failure to allege facts to establish any one of these elements dooms a substantive due process claim).

Moreover, as the Complaint fails to allege proximate cause to sustain liability against Defendants Condon and White, Plaintiff's *Monell* claim against Rideway is similarly fated. Here, Plaintiff's theory of the case is that Ridgway failed to appropriately train its officers to respond to impaired and mentally unstable drivers, like Brooke (Doc. 1). However, the Seventh Circuit has squarely rejected this type of independent claim. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) (citing *King,* 496 F.3d at 817, *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007)) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal

employee."). Because Plaintiff's Complaint fails to state a claim for individual liability against Condon and White, it also fails to state a claim against Ridgway.

## Conclusion

For the above stated reasons, Defendants' Motion to Dismiss (Doc. 19) is **GRANTED**. Plaintiff's Complaint (Doc. 1) is **DISMISSED, without prejudice**, for a failure to state a claim. Plaintiff is granted leave to file an amended complaint by **March 21, 2022**.

**SO ORDERED.**

Dated: March 1, 2022

_____
DAVID W. DUGAN
United States District Judge